OPINION OF THE COURT
Phylis Skloot Bamberger, J.
Tremaine Whitaker was killed during a series of incidents that occurred between a large number of people at 40 River *739 Park Towers on the early morning of February 15, 1997. The defendant is charged with the killing of Tremaine. The defendant seeks to introduce into evidence, through stipulation, a statement made by Tremaine. The statement made only in the presence of his girlfriend, Michelle Brown, was “that he would break every last one of their asses.” It was made to Michelle just after Tremaine went home from River Park Towers and learned by telephone call from one of his brothers that another of his brothers had been robbed by the Tower Boys. The Tower Boys is a group of young men, including the defendant and his brother Bruce, who is also charged in this case, who live in the River Park Towers complex. After he made the statement, Tremaine returned to River Park Towers where the series of encounters took place, one of which resulted in his death.
The defense position is that Tremaine’s statement permits the inference that, when he returned to River Park Towers, Tremaine did some unspecified act of violence against one or more of the Tower Boys. The defense seeks to use this evidence to show that the defendant’s state of mind was affected by the conduct of Tremaine. This, asserts the defense, is important because the defense wants to persuade the jury that the defendant had a lower culpable mental state than is required for conviction of the most serious charges in the case.
The cases cited by the defense to support its position are Mutual Life Ins. Co. v Hillmon (145 US 285 [1892]); People v Maddaloni (214 AD2d 325 [1st Dept], lv denied 86 NY2d 737 [1995]); People v Chambers (125 AD2d 88 [1st Dept], appeal dismissed 70 NY2d 694 [1987]); and People v Malizia (92 AD2d 154 [1st Dept 1983], affd 62 NY2d 755, cert denied 469 US 932 [1984]). The rule referred to by the defense authorizes, under appropriate circumstances, the use of declarations of future intention to infer subsequent acts of the declarant. The declaration shows the declarant’s intent and the jury is permitted to infer from that intent that the act was carried out. (People v Malizia, 92 AD2d, at 155.)[1] In the cases in which a statement of future intent was found to be properly admitted, there was a *740 basis in the record premised on evidence independent of the statement of future intent that supported the inference that the act was carried out.
In Hillmon (supra), a body was found in the remains of a fire in a specific town in Kansas, and Mrs. Hillmon sought to recover the insurance benefits due upon the death of her husband. The question to be decided was whether the body was not Hillmon’s, but someone else’s. The insurance company sought to prove that the body was not Hillmon’s by using a statement made by one Walter that he was going to a particular location in Kansas with Hillmon. The statement was found probative of Walter’s taking a trip to the Kansas town. The statement would have had no value if the body had not been found in the named location in Kansas.
In People v Conklin (175 NY 333 [1903]), the defendant was charged with the murder of his wife. The defendant sought to admit into evidence the statement of his wife made three years earlier that she would kill herself. The Trial Judge refused to admit the evidence. The Court of Appeals found that ruling to be error because of the defendant’s own statement that his wife committed suicide. But, said the Court of Appeals, the “theory of suicide had such a very slender support” and that only through the defendant himself when all of the other evidence pointed to the defendant as the murderer. (Supra, at 343.) The Court concluded there was “very slight” relevance to the statement and, despite the exclusion of the evidence, refused to reverse the conviction. (Supra.)
In Landon v Preferred Acc. Ins. Co. (43 App Div 487 [2d Dept 1899], affd 167 NY 577 [1901]), the body of the declarant was found off the shore of Staten Island. The issue in the case was whether the death was accidental. Other evidence in the case showed that there was no violence, injury, robbery or epilepsy. The Court found that the admission of the declarant’s statement that he was going to Staten Island to visit a particular person and to do some collections, his area of work, explained the presence of the body where it was found and was consistent with the normal act of doing his work.
*741 In the present case, there is no evidence before the jury to give credence to the desired inference — that Tremaine engaged in an act or acts of violence against the Tower Boys — and there is no evidence to show that Tremaine’s conduct had the desired affect on the defendant’s culpable mental state.
According to the evidence, Tremaine arrived at the location, the courtyard and lobby of 40 River Park Tower. He was angry and crying and saying that his brother was beaten and pistol whipped. His friends took him aside for the purpose of calming him down. The evidence shows that at some point Tremaine left the area and went upstairs in the elevator to the hallway in front of LaKeisha Edwards’ 24th floor apartment at 40 River Park Towers. He was with a person named Brady who was having an asthma attack. He returned to the lobby and courtyard shortly thereafter with a woman named Sherri Raye. According to the testimony, he was still angry and aggravated because his brother had been jumped, but he did not speak of revenge or beating up on anyone. Nothing further is known about Tremaine until he was surrounded by defendant and as many as 10 to 15 others and was stabbed. There is no evidence that Tremaine did any act of violence. Rather, the evidence in the case suggests that Tremaine’s friends prevented him from acting on his intention to “break * * * their asses” by taking him away to calm him down and that Tremaine actually left the scene for a period to go to the 24th floor. In actuality, there is no evidence that any Tower Boy was injured.
On the other hand, the evidence shows the defendant and his brother Bruce were in a separate fight with Qu-ran Clark before Tremaine was killed and the only testimony is that the defendant, Bruce and a friend of theirs named “Nut” were the attackers. The testimony at trial is that during the fight the defendant caused injury to Qu-ran Clark with a knife. Further, the evidence is that no one other than the defendant and perhaps Bruce and a Nut were seen with knives[2] and that the defendant had his knife out and was threatening others with it.
Moreover, even if it were permissible for the jury to infer that Tremaine committed a violent act, there is no evidence at all to show .that this act would have affected the defendant’s *742 culpable mental state. As the defense agrees, the defendant did not know about the statement. (The defense learned about it from the police reports.) Further, there is nothing at all in the record that would allow the jury to find that the defendant observed Tremaine do a violent act. Without the defendant having knowledge of either Tremaine’s statement or an act of violence by him there is no way for the jury to find that the defendant’s culpable mental state was affected by some act of Tremaine. Accordingly, admission of Tremaine’s statement would encourage the jury to speculate about facts not in evidence and this is antithetical to the principle, about which the jurors are instructed, that they are not to speculate.
The defense effort to have the jury use Tremaine’s statement to engage in impermissible speculation is illustrated by the argument made for admission of the statement. When seeking to explain how he would use the statement to show Tremaine committed a violent act, defense counsel said there was a short time period after Qu-ran was injured and before Tremaine was stabbed when Tremaine, the defendant and one or more other Tower Boys might have been alone. The defense conceded that there was no testimony that they were in such a group or about what the defendant or Tremaine were doing in this period. But, based on Tremaine’s statement, the defense argued, the jury might conclude that in this time, about, which there was no evidence, Tremaine had the chance to and did commit or attempt to commit a violent act against one or more of the Tower Boys and that the defendant either suffered Tremaine’s abuse or witnessed it.[3] It is readily apparent that this scenario is not based on evidence but upon speculation and to allow this argument would lead the jury to make up facts when there is no evidence in the record.
In the absence of evidence that the defendant saw, observed or otherwise knew about violent conduct by Tremaine, this court will not permit the admission of Tremaine’s statement.

. The defense in the main relied upon Malizia and Chambers (supra). However, except for their statements of the general rule, these cases are not directly applicable here. They involve statements that refer to an act to be done with another person. In such circumstances, additional factors are required for admissibility: the statement is admissible only when the statement is made under circumstances that make it probable that the expressed intent was a serious one and when it is realistically likely that such an act would in fact take place. (People v Malizia, 92 AD2d, at 160.) Contingencies against the act happening because of the involvement of another person go to *740 the weight of the evidence, but the statement is inadmissible when the contingencies “are so copious as to accord the statement little probative value”. (People v Chambers, 125 AD2d, at 92.) The reason for the additional requirement comes from the fact that the declarant’s statement encompasses more than just his or her own conduct. The command to avoid “copious contingencies” guards against the possibility that the jury will draw some impermissible conclusion about the nondeclarant’s conduct.

. Even this evidence is minimal. It came on a 911 call from Qu-ran Clark reporting he had been stabbed. In the call he said they were coming after him with knives. Jamel Clark testified the three people after Qu-ran were Bruce, Nut, and the defendant. Qu-ran repudiated at trial the statement in the 911 call and testified that only one person had a knife.

. The discussion of this issue extended over two days on transcript pages 1312 to 1396 and 1469 to 1472. At page 1392, the court summarized defense counsel’s position as set about in the text and counsel agreed that it was his argument.